**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Manuel Antunes, | : | |
| Debtor. | : | Bankruptcy No. 15-16553-**MDC** |
| | | |
| Manuel Antunes and Judith M. Antunes, | : | |
| Plaintiffs, | : | |
| v. | : | Adversary No.  21-00019-**MDC** |
| Emigrant Mortgage Company, *et al.* | : | |
| Defendants. | : | |

# **M E M O R A N D U M**

## I. INTRODUCTION

Emigrant Mortgage Company, Inc., Emigrant Residential, LLC, B/Q Retained Realty, LLC, and Retained Realty Inc. (collectively, the "Defendants") has filed a motion to dismiss the thirteen (13) count Amended Complaint (the "Amended Complaint") filed by Manuel and Judith M. Antunes' (the "Plaintiffs") that seeks to recoup the Plaintiffs' equity in two properties they previously owned and lost to the Defendants via mortgage foreclosure proceedings along with the value of certain personal possessions.

The Defendants raised several grounds for dismissal in their motion.  However, following oral argument on this matter, the Court concluded that resolution of this matter lies with a determination whether the Court has jurisdiction over the causes of action raised in the Amended Complaint.  The Court concludes that because it lacks jurisdiction over Counts I-III and Counts

VI-XIII, and because the Plaintiffs lack standing to pursue the remaining Counts IV and V, the Court must dismiss the Amended Complaint with prejudice.

## II. FACTS AND PROCEDURAL BACKGROUND

On September 11, 2015 (the "Petition Date"), Manuel Antunes, Sr. (the "Debtor") filed a voluntary bankruptcy petition under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§101, *et seq.* (the "Bankruptcy Code").[1] The Debtor converted his case twice since the Petition Date; first from chapter 13 to chapter 11 on September 1, 2016,[2] and then from chapter 11 to chapter 7 on March 21, 2017.[3] Robert H. Holber was appointed as the Chapter 7 Trustee (the "Trustee") on March 22, 2017.

On August 4, 2017, two (2) motions for relief from the automatic stay were filed by certain defendants in this adversary matter: (1) Emigrant Residential, LLC ("Emigrant Residential") filed a motion with respect to property at 2104 Brookhaven Drive, Yardley, Pennsylvania ("the Brookhaven Property"),[4] and (2) B/Q Retained Realty, LLC, ("B/Q Retained Realty") filed a motion with respect to property at 192 Pine Lane, Newtown, Pennsylvania ("the Pine Lane Property")[5] (collectively "the Properties"), both of which were owned by the Debtor and his spouse, Judith M. Antunes.[6]

---

[1] Bankr. Docket No. 1.

[2] Bankr. Docket No. 134.

[3] Bankr. Docket No. 221.

[4] Bankr. Docket No. 287.

[5] Bankr. Docket No. 289.

[6] Emigrant Mortgage Company Inc. ("Emigrant Mortgage") entered into two mortgage loan transactions with the Plaintiffs on or about February 28, 2008. The Pine Lane Property secured one loan in the principal amount of $186,000.00. On October 18, 2011, Emigrant Mortgage assigned the mortgage to ESB-B/Q Holdings, LLC ("B/Q Holdings"). B/Q Holdings commenced foreclosure proceedings with

On February 27, 2018, B/Q Retained Realty obtained relief from the automatic stay in connection with the Pine Lane Property.[7] The Plaintiffs attempted to postpone the sale by filing with the Court of Common Pleas of Bucks County a Petition to Stay the Sale and a Petition for Determination of Amount Due, both of which were denied, and the Pine Lane Property was subsequently sold by the sheriff, with B/Q Retained Realty obtaining the property pursuant to a deed issued on January 16, 2019.

On June 12, 2019, Emigrant Residential obtained relief from the automatic stay with respect to the Brookhaven Property (Bankr. Docket No. 509) permitting Emigrant Residential to proceed with foreclosure, and a final judgment in mortgage foreclosure was entered with respect to the Brookhaven Property on September 24, 2019.[8]

On March 1, 2021, the Plaintiffs commenced the above-captioned adversary proceeding by filing a complaint seeking certain relief against the Trustee and the Defendants alleging *inter*

---

respect to the Pine Lane Property on March 21, 2012, in the Court of Common Pleas of Bucks County. Final judgment in favor of B/Q Holdings was entered on May 9, 2012. B/Q Holdings then assigned the Pine Lane foreclosure judgment to B/Q Retained Realty.

The Brookhaven Property secured the other loan in the amount of $118,250.00. On June 5, 2012, Emigrant Mortgage assigned the mortgage to Emigrant Residential. On August 10, 2015, Emigrant Residential filed a foreclosure complaint against the Plaintiffs, after which the Debtor initiated this bankruptcy proceeding on September 11, 2015.

[7] Bankr. Docket No. 370.

[8] Emigrant Residential had previously filed a motion for relief in August 2017, which was subsequently settled. Emigrant Residential filed a new motion for relief on May 3, 2019, which the Court ultimately granted on June 12, 2019. After the final judgment in mortgage foreclosure was entered on September 24, 2019, the sheriff sold the Brookhaven Property to Retained Realty, Inc. ("Retained Realty") on February 14, 2020. The sheriff's deed to the Property was issued on April 15, 2020, and recorded on April 23, 2020, by the Bucks County Recorder of Deeds. Then, on October 12, 2020, Retained Realty filed an ejectment complaint against the Plaintiffs to obtain possession, but later filed a petition for rule to show cause why the Brookhaven Property should not be certified as abandoned. The Plaintiffs never responded to the abandonment petition after being served on July 12, 2021. The Bucks County court ultimately certified the Brookhaven Property was abandoned on December 8, 2021.

*alia*, that the Defendants colluded to deprive the Plaintiffs of the Properties.[9]

On June 18, 2021, the Trustee filed a motion seeking approval of a settlement with the Plaintiffs to voluntarily dismiss the Trustee with prejudice as a defendant from this adversary proceeding (the "Settlement Motion").  Adv. Pro. Docket No. 7.

On October 13, 2021, while the Settlement Motion was pending, the Plaintiffs filed the Amended Complaint which removed the Trustee as a defendant and added additional claims against remaining Defendants.  Adv. Pro. Docket No. 23.

The Amended Complaint avers thirteen (13) counts[10] against the Defendants, targeted at recovering the Plaintiff's alleged lost equity and personal property, along with other damages

---

[9] Adv. Pro. Docket No. 1.

[10] The Amended Complaint raises the following claims:

> Count I - Breach of Contract with respect to the Pine Lane Property
> Count II - Breach of Contract with respect to the Brookhaven Property
> Count III - Interference with Contract with respect to the Brookhaven Property
> Count IV - Objection to Proof of Claim No. 6-2
> Count V - Objection to Proof of Claim No. 7-2
> Count VI - Replevin and Damages with respect to the Pine Lane Property
> Count VII - Replevin and Damages with respect to the Brookhaven Property
> Count VIII – Violations of the Consumer Financial Protection Bureau regulations, 12 C.F.R. §1026.36(c)(3)
> Count IX – Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq*
> Count XI – Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-9.2
> Count XII – Common Law Fraud
> Count XIII – Unjust Enrichment

The gist of Plaintiffs' Amended Complaint is that Defendants breached various contractual and statutory duties by charging and/or collecting foreclosure fees, costs, and excessive interest in violation of the terms of the mortgage loan contract, inaccurately filing a bankruptcy claim, maintaining ongoing inaccurate account records, and presenting an inaccurate and incomplete payoff statements. Plaintiffs assert that if the payoff statements the Plaintiffs requested been accurate and complete, it would have allowed them to refinance and pay off their mortgage loans prior to the sheriff's sales.  The Plaintiffs also aver that the sheriff's sales of the Properties deprived them of their continuing possessory rights in the Properties and access to and possession of their personal property currently located or previously located at the Properties.

and relief, that the Plaintiffs allege were illegally converted by the Defendants for their own benefit.

On November 24, 2021, the Defendants filed a Motion to Dismiss Complaint (the "Motion to Dismiss"). Adv. Pro. Docket No. 36. On January 10 and 11, 2022, the Debtor filed a Response and a Memorandum in Opposition to the Motion to Dismiss (the "Debtor's Opposition").[11]

On April 27, 2022, at a preliminary hearing on the Motion to Dismiss, the Court requested additional briefing, to be filed by June 13, 2022. The Parties requested and were granted two extensions of time to file the briefs by July 15, 2022.[12]

The Defendants timely filed their supplemental brief (the "Defendants' Supplemental Memo") by July 15, 2022, in accordance with the Court's second extension, but the Plaintiffs instead filed a motion for an additional week to file its brief by July 22, 2022, which the Court granted.[13] The Plaintiffs never filed a supplemental brief in accordance with the Court's request and multiple deadline extensions.

### III. DISCUSSION

#### A. The Law

The principles of bankruptcy court subject matter jurisdiction are well established. Bankruptcy jurisdiction is conferred by 28 U.S.C. § 1334(a) and (b) and may extend to four types of matters: (1) cases under title 11 (the "Bankruptcy Code"); (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case

---

[11] Adv. Pro. Docket Nos. 40 and 41.

[12] Adv. Pro. Docket Nos. 60 and 63.

under title 11. *In re Universal Mktg, Inc.*, 541 B.R. 269, 305 (Bankr. E.D. Pa. 2015)*, citing In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-226 (3d Cir. 2004).

Assuming subject matter jurisdiction exists, all bankruptcy matters, other than the bankruptcy case itself, may be classified into two separate categories: (1) core proceedings; and (2) non-core proceedings that are otherwise related to a case under title 11. *See* 28 U.S.C. §157(b), (c); *In re Mullarkey*, 536 F.3d 215, 221 (3d Cir. 2008).[14]

To determine whether a proceeding is core, the court must consult 28 U.S.C. §157(b), which sets forth an illustrative list of core proceedings, and evaluate whether the proceeding involves claims that invoke a substantive right provided by the Bankruptcy Code or claims that could arise only in the context of a bankruptcy case. *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. *Id.* at 837. A proceeding is related to the bankruptcy case if it has the potential of affecting the bankruptcy estate, *i.e.*, the outcome of the proceeding will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds, Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995); *In re Shuman*, 277 B.R. 638, 647 (Bankr. E.D. Pa. 2001).

---

[13] Adv. Pro. Docket No. 67.

[14] The core/noncore distinction is significant. It determines the court's ultimate level of decision-making authority. While the bankruptcy court has statutory authority to determine all core matters, it may not enter a final judgment in a non-core proceeding unless all parties consent. Failing such consent in non-core proceedings, the bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for *de novo* review. *See* U.S.C. 157(c); *see also Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). It is important to note that "[e]valuating whether a proceeding is core or non-core should not be confused with the primary question whether jurisdiction exists." *In re Island View Crossing II, L.P.*, 598 B.R. 552, 558-560 (Bankr. E.D. Pa. 2019). Consideration of the core/noncore distinctions

Under *Pacor,* most questions involving the scope of the court's non-core ("related to") jurisdiction are determined by focusing on the effect, if any, that resolution of the dispute may have on the bankruptcy estate. "Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount of priority of claims to be repaid." *Shuman*, 277 B.R. at 647; *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1994) (bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor).

### B.    The Parties Arguments

The Defendants proffer three (3) primary bases upon which the Court could dismiss the Amended Complaint for lack of subject matter jurisdiction. First, the Defendants argue the Court lacks jurisdiction because prosecution of any and all claims will have no conceivable effect on Debtor's no-asset chapter 7 bankruptcy proceeding. Second, the Defendants assert the Plaintiffs lack standing to challenge Defendants' proofs of claim filed in this case. Finally, according to Defendants, *res judicata* bars re-litigation of certain claims that were already decided by the Court of Common Pleas and Pennsylvania Superior Court and therefore those claims must be dismissed.

As noted above, the Plaintiffs failed to comply with this Courts request to file supplemental briefing addressing the Court's jurisdiction.

### C.    Analysis

This adversary proceeding arises in the Debtor's bankruptcy case, originally filed on September 11, 2015, under chapter 13 of the Bankruptcy Code. Over seven years later and after

---

nevertheless provides guidance in analyzing the existence of subject matter jurisdiction itself.

converted trips through chapters 13 and 11 of the Bankruptcy Code, the Trustee issued his Final Report on December 20, 2022.[15] Importantly, the Debtor's estate is administratively insolvent as determined by the Trustee prior to 2020.[16] Resolution of the adversary proceeding is the only task that remains in this Chapter 7 case.

The Court approved the Trustee's motion to abandon the Pine Lane Property on January 17, 2018[17]. Moreover, the Trustee did not object or otherwise respond to Emigrant Residential's motion for relief from the automatic stay, by which it sought permission to proceed with the sheriff's sale on the Brookhaven Property. There also was not any formal action to stay or postpone the sheriff's sale of the Brookhaven Property after the Court granted the motion for relief in June 2019. Instead, the Trustee permitted the Brookhaven property to be sold on February 14, 2020.

As such, the two properties that are the subject of this adversary matter — the Pine Lane Property and the Brookhaven Property — are no longer available to the estate; they have long-since been abandoned by the Trustee and transferred to third parties following the granting of stay relief to allow foreclosure proceedings to go forward.

Given the estate has no further interest in the Properties, the outcome of the eleven non-

---

[15] Bankr. Docket No. 576.

[16] *See* Bankr. Docket No. 563, which is the final fee application of the Trustee's counsel, at 4 ("It should be noted that prior to 2020, undersigned counsel recognized that this estate would not have sufficient net assets available to pay any approved fee application of Flaster/Greenberg. As a result, at that time, despite the fact that there was substantial more work needed to complete the administration of these cases, Flaster's attorneys essentially stopped recording/billing their time (as a point of reference, the attached time records only reflect 17.3 hours in 2020 and 6.7 hours in 2021).")

[17] Bankr. Docket No. 359.

core claims (Counts I-III and Counts VI-XIII )[18] in this adversary matter will neither enhance nor impact the handling or administration of this insolvent bankruptcy estate. Speculative assertion that a recovery could result in personal gain to the Plaintiffs cannot be enough to establish "related to" subject jurisdiction. *See In re Scott*, 607 B.R. 211, 223-24 (Bankr. W.D. Pa. 2019). Accordingly, Counts I-III and Counts VI-XIII will be dismissed for lack of subject matter jurisdiction.

However, this Court has subject matter jurisdiction over Counts IV (Objection to Proof of Claim No. 6-2) and Count V (Objection to Proof of Claim No. 7-2). A proceeding relating to the allowance or disallowance of a proof of claim is a matter that "arises in" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b). *See In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996*)* (referring to the filing of proof of claim as a matter that "would arise only in bankruptcy").

Counts IV and V will be dismissed nonetheless because the Plaintiffs lack standing to pursue them. The only party with standing to challenge claims in this case was the Trustee. *See, e.g., In re Toms*, 229 B.R. 646, 650 (Bankr. E.D. Pa. 1999) (typically standing to object to claims in a chapter 7 case is reserved to the chapter 7 trustee with the statutory duty to review and object to claims if a purpose would be served, subject to an exception permitting a debtor to object if the debtor can show a reasonable possibility of a surplus after all debts are satisfied, giving the debtor sufficient pecuniary interest to establish standing); *In re Choquette*, 290 B.R. 183, 186 (Bankr. D. Mass. 2003) (noting that a chapter 7 debtor only has standing to object to proofs of

---

[18] Counts I-III and Counts VI-XIII are all non-core with only potentially "related to jurisdiction" because they are state law claims or do not emanate in any way from the Bankruptcy Code. For example, claims

claim if the trustee declines to do so and if the debtor has a pecuniary interest arising from a demonstrable surplus); *In re Mohr*, 538 B.R. 882, 885 (Bankr. S.D. Ga. 2015) ("the chapter 7 trustee is the proper party to review and object to proofs of claim . . . . in a chapter 7 case where a trustee has been appointed and there is no surplus to create a pecuniary interest on debtor's behalf, a debtor lacks standing to object to a creditor's claims") (internal citations omitted).

Here, the chapter 7 estate was administratively insolvent, and the Plaintiffs have not and cannot establish a surplus that gives them a pecuniary interest in the claim objections. The Debtor's schedules, statements, and the Trustee's Final Report all confirm that the Debtor's debts significantly exceed his assets. [19]

---

under the Fair Debt Collection Practices Act (Count IX) do not depend on the existence of a bankruptcy case to be viable.

[19] In their Response, the Plaintiffs assert that:

> even if a portion of the Plaintiffs' recovery in this case went to the Trustee instead of the Debtor because the Debtor's debts exceed the estate assets, the Trustee would first be obligated to disburse funds attributable to joint debts to priority claims, including non- dischargeable claims that have been filed in the case. Thus, if Emigrant's claims were disallowed, it would be more likely that the Trustee would disburse funds to priority claimants of the Debtor and/or both the Debtor and Judith Antunes, thus providing a concrete benefit to the Plaintiffs, who would no longer be obliged to pay those non-dischargeable debts upon the conclusion of case administration and closing of the case.
>
> Whether the disallowance of the Emigrant Defendants' claims permits an increased recovery for co-Plaintiff, Judith Antunes, or merely reduces the non-dischargeable obligations of the Debtor (some of which may be joint obligations with co-Plaintiff, Judith Antunes), either way there is a direct pecuniary benefit of the litigation to the Plaintiffs. Thus, although the Emigrant Defendants correctly cited cases on page 9 of their brief that stand for the proposition that Plaintiffs must have a pecuniary interest in the outcome of the claim litigation in order to have standing to pursue such litigation, in this instance they clearly do have such a pecuniary interest.

*See* Debtor's Opposition at 9 (Adv. Pro. Docket No. 41). A second exception to the chapter 7 trustee-only standing rule exists for claims that are not dischargeable. *Toms*, 229 B.R. at 651. However, I reject the Plaintiffs' position. First, they are not arguing that the claims subject to the objection are non-dischargeable, only that disallowance of the claims would allow greater payment to non-dischargeable claims, thereby reducing the Debtor's obligation on those claims. That is not what the limited exception

IV. **CONCLUSION**

Because the Court lacks jurisdiction over Counts I-III and Counts VI-XIII, and because the Plaintiffs lack standing to pursue the remaining Counts IV and V, the Court dismisses the Amended Complaint with prejudice.[20]

An **ORDER** consistent with this opinion shall be entered.

Dated: April 30, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Roger V. Ashodian, Esquire
Regional Bankruptcy Center of SE PA
101 West Chester Pike, Suite 1A
Havertown, PA 19083

Christopher J. Leavell, Esquire
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103

---

to the standing rule provides. Furthermore, standing is not established by any speculative pecuniary interest from which non-debtor co-Plaintiff Judith Antunes could realize a benefit.

[20] Based on the Court's conclusions regarding its lack of jurisdiction and Plaintiffs' lack of standing, the Court need not reach the Defendants *res judicata* arguments.